■ CEMD ELEVATOR CORP., Doing Business as CITY ELEVATOR, Respondent, v METROTECH LLC I, Appellant. [35 NYS3d 336]—

Judgment, Supreme Court, New York County (Milton A. Tingling, J.), entered October 16, 2014, awarding plaintiff damages, interest, attorneys' fees, and costs and expenses in the total sum of $145,016.73, unanimously reversed, on the law and the facts, without costs, and the matter remitted to the IAS court for an evidentiary hearing. Appeals from order and amended orders, same court and Justice, entered, respectively, August 29, 2014 and September 12, 2014, September 17, 2014, and October 9, 2014, which, to the extent appealed from as limited by the briefs, granted plaintiff's motion to strike defendant's answer under CPLR 3126 and for summary judgment on its complaint under CPLR 3212, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

In January 2011, plaintiff, an elevator company, commenced this action against defendant, the sponsor and developer of a cooperative building located in Brooklyn, seeking to recover $68,683.07 in unpaid elevator maintenance fees. The complaint alleged that defendant retained plaintiff to maintain and repair the elevators on defendant's property, and that defendant failed to pay the resulting invoices. The complaint further alleged that under a contract between the parties, defendant was liable to plaintiff for unpaid invoices plus service charges at 1.5% per month from the date 30 days after the issuance of each invoice, as well as counsel fees and costs incurred in a collection action.

In its answer, defendant admitted that it had hired plaintiff for the elevator work, and further stated that the parties had entered into a maintenance agreement with which plaintiff failed to comply. Defendant asserted counterclaims, alleging, among other things, that plaintiff had breached the initial installation agreement and a later maintenance agreement by failing to properly install and maintain the elevator.

By July 15, 2012, the parties had completed document discovery, but they had not conducted any depositions. At a conference on March 2, 2014, the parties submitted an order that, according to defendant, they had drafted together, stating that depositions were to be completed within 30 days. The order further stated, "If either party fails to notice during that time[,] his right to take the other[']s deposit[i]on is waived[,] or if he fails to appear[,] his pleading shall be stricken." The IAS court signed and issued the order on the same day.

On March 3, 2014, plaintiff's counsel served a notice requesting that defendant appear for a deposition on March 24, 2014 at counsel's office. On March 11, 2014, defendant's counsel responded by email that his client would produce an employee of defendant for the deposition, but stated that they would schedule the deposition at the employee's office in Brooklyn. Defense counsel also stated that he would like to depose plaintiff's owner, and that he might need to extend the 30-day deadline in the March 2, 2014 order to do so. Neither party disputes that plaintiff's counsel did not respond to that email. Defense counsel sent a follow-up email on March 17, 2014 concerning both depositions; again, neither party disputes that plaintiff's counsel did not respond to that email.

Meanwhile, defense counsel claimed that, in preparing for his client's deposition, he had discovered that defendant itself had not executed the maintenance agreement upon which plaintiff sued; rather, counsel claimed, the property's managing agent, Douglas Elliman Real Estate, had executed the agreement. More specifically, counsel stated that although defendant entered into an elevator *installation* agreement with plaintiff, Douglas Elliman actually entered into the *maintenance* agreement upon which plaintiff was suing.

According to two affidavits submitted on defendant's behalf, plaintiff's counsel then agreed to postpone the depositions for a few weeks while an executive vice-president of Douglas Elliman discussed the matter with the building's board of directors. Further, defense counsel stated that he "believe[d]" that he telephoned plaintiff's counsel to discuss depositions and to discuss the matter of the signatories to the agreements, but plaintiff's counsel did not return the call.

On March 24, 2014, plaintiff's counsel retained a court reporter for a deposition at his, counsel's, office. Counsel asserted that although the deposition was scheduled for 10:00 a.m., nobody had appeared for the deposition as of 10:30 a.m., and plaintiff's counsel had not seen or heard from defense counsel.

On April 1, 2014, plaintiff moved to strike defendant's answer under CPLR 3126 and for summary judgment on its complaint under CPLR 3212. Plaintiff argued that the March 2, 2014 compliance order clearly stated that a party's pleading "shall" be stricken if it failed to appear for a deposition, and that defendant's failure to appear for the properly noticed March 24 deposition entitled plaintiff to that relief and to a default judgment. Plaintiff also stated that there had been five prior orders directing the parties to complete depositions by a certain date, and that he had attempted in good faith to get defendant to commit to a date to complete discovery, but that defense counsel declined to do so.

In opposition, defendant argued that plaintiff's motion to strike should be denied because plaintiff's counsel, upon realizing that he had sued the wrong party, "manufactured" the default by holding a "sham deposition" so that he could make his motion for a default judgment. Defense counsel also pointed out that plaintiff's counsel did not return his calls and emails about the depositions, nor did plaintiff's counsel contact him a day or two before the scheduled deposition to confirm, as was common practice in any litigation.

Plaintiff's motion to strike defendant's answer and for summary judgment on its complaint should have been denied. Striking a party's pleadings is a drastic sanction, and will generally be made only upon a clear showing that the party's conduct was willful and contumacious (*see Catarine v Beth Israel Med. Ctr.*, 290 AD2d 213, 215 [1st Dept 2002]; *see also Frye v City of New York*, 228 AD2d 182 [1st Dept 1996]).

Plaintiff failed to make this showing. On the contrary, the record makes clear that the facts surrounding defendant's failure to appear for the deposition on March 24, 2014 are in dispute. According to affidavits submitted on defendant's behalf, one from an employee of defendant and one from an executive vice-president at Douglas Elliman, plaintiff had affirmatively agreed to postpone depositions while the parties tried to discern, among other things, who had signed which agreements. Thus, under the circumstances presented here, a hearing is required to determine, among other things, whether defendant's failure to attend the deposition was willful and

contumacious (*see Genton v Arpeggio Rest.*, 232 AD2d 274 [1st Dept 1996]; *see also Frye*, 228 AD2d at 182). This conclusion holds particularly true in light of the strong preference in this state for deciding matters on the merits (*see Catarine v Beth Israel Med. Ctr.*, 290 AD2d 213, 215 [1st Dept 2002]). Accordingly, we reverse and remit the matter for an evidentiary hearing. Concur—Tom, J.P., Andrias, Moskowitz and Richter, JJ.